## Case No. 13,537.

### STRODE v. THE STAFFORD JUSTICES.

[1 Brock. 162.] [1]

Circuit Court, D. Virginia. May Term, 1810.

WRIT OF ERROR—LIMIT OF TIME—ERROR CORAM NOBIS—PRACTICE AT LAW.

1. The 22d section of the original judicial act [1 Stat. 84], limiting the period within which writs of error may be brought to five years after the rendition of the judgment, or decree complained of, applies only to writs of error in law, and does not extend to writs of error coram nobis.

[Cited in Sanders v. State, 85 Ind. 326.]

2. In the construction of statutes, one part must be construed by another. In order to collect the legislative intention, the whole statute must be inspected.

[Cited in U. S. v. Freeman, 3 How. (44 U. S.) 565; U. S. v. Collier, Case No. 14,833.]

[Cited in Braithwaite v. Cameron, 38 Pac. 1086.]

In May, 1795, a judgment was obtained in this court, in favour of Rebecca Backhouse, administratrix of John Backhouse, deceased, against Adam Hunter and Abner Vernon, executors of James Hunter, deceased, surviving partner of "Ward & Hunter," for $8238 45, to be levied of the goods and chattels of the said James Hunter, deceased, in the hands of the defendants, to be administered. Before the rendition of this judgment, Abner Vernon had died; and in December, 1809, the plaintiff, John Strode, administrator of the said Abner Vernon, presented his petition to this court, setting forth the death of his intestate, prior to May, 1795, and praying a writ of error, coram nobis, to reverse the said judgment, for the alleged error in fact. The writ of error was awarded, and the defendant, the relator in the action, pleaded the statute of limitations in bar. To this plea, the plaintiff demurred generally, and the defendant joined in demurrer.

MARSHALL, Circuit Justice. The sole question in this case is, whether the limitation of five years, can be pleaded to a writ of error in fact, and this question depends on the construction of the 22d section of the original judicial act.[2] That section contains the following clause: "And writs of error shall not be brought, but within five years after rendering or passing the decree complained of." That this clause, standing unconnected with other provisions, which necessarily limit its operation, would extend to writs of error in fact, will not be controverted. But it is intermingled with other clauses, which essentially influence its construction. For reasons urged at the bar, which I will not repeat, it is perfectly clear, that the writ of error given in the 22d section, is not a writ of error coram nobis, but

[1] [Reported by John W. Brockenbrough, Esq.]

[2] 1 Story's Laws, c. 20, § 22, pp. 60, 61; Act 1789 [1 Stat. 84].

a writ to be issued from a superior court, for the purpose of correcting the errors of an inferior jurisdiction. This is admitted by the counsel for the defendant; but he would obviate the inference to be drawn from it, by contending, that writs of error for the purpose of correcting errors in fact, lie from the supreme to the circuit court, and from the circuit to the district court. In aid of this argument, he states a doubt expressed by one of the judges of the court of appeals, respecting the power of that court to reverse the judgments of inferior courts for errors in fact. If, instead of a doubt, the jurisdiction had been averred, that opinion would have been totally inapplicable to this case, because the law, by which the court of appeals is constituted, gives them cognizance of all causes brought before them by writ of error generally,[3] without specifying the nature of the writ, or restricting their powers to errors in law; but the judicial act expressly provides, that "there shall be no reversal in either court," "for any error in fact." Consequently, the act of congress must be entirely disregarded, before the supreme court can take cognizance of errors in fact, committed in an inferior court, in a case brought up by writ of error. This positive prohibition of the act, is supposed to be overruled by the exceptions to the clause which limits writs of error. They are, that "in case the person entitled to such writ of error, be an infant, feme covert, non compos mentis, or imprisoned, then within five years as aforesaid, exclusive of the time of such disability."

It is contended, that these cases are necessarily cases in which the error must be an error in fact, and, therefore, the act of limitations must be construed to extend to writs of error in fact. But the truth of the original proposition cannot be conceded. Judgments may certainly be rendered against infants, femes coverts, persons non compos mentis, or imprisoned, which may be erroneous in point of law; and for these errors, a writ of error may be sued out, the right to which is not barred by the act of limitations. There is, then, no necessity for giving these words a meaning repugnant to the plain terms and intention of the act. But it is contended, that the general words: "And writs of error shall not be brought, but within five years after rendering the judgment, or decree complained of," are unrestricted, and apply to all writs of error whatever, whether such as congress then had in contemplation, or such as were at the time, entirely out of the mind of the legislature. This would be a manifest departure from the common principles of construction, and from what appears to be the plain intent of the act. These words, though general, are not such as to show, that the term "writ of er-

ror," is used in this instance in a more extended sense than is affixed to it throughout the section, and also through the 23d and 24th sections. They are, "and writs of error," that is, writs of error which are the subjects of the law. It is probable, that had a more extended operation been intended, some terms would have been used indicative of that intention. Instead of the words, "and writs of error," we should, most probably, have found the words, "all writs of error whatever," or "all writs of error, whether brought in a superior court, or in the same court," or some other terms, indicative of an intention to regulate writs which were not the objects to which the attention of the legislature was at the time directed.

But it is urged, that one sentence of a law cannot be affected by the context. I should as soon have expected the declaration that one sentence of a will was not to be affected by other parts of the will. In each, the intention of the maker is to be affected, and, consequently, each instrument must be wholly inspected. Without reasoning upon this subject, the books abound with authorities, which seem to be conclusive. In 1 Inst. 381, Lord Coke says: "It is the most natural and genuine exposition of a statute, to construe one part of a statute by another part of the same statute, for that best expresseth the meaning of the makers." He afterwards adds: "And this exposition is ex visceribus actus." The instances which illustrate this axiom, in the construction of statutes, are numerous. They are to be found in all books which touch on the subject, and many have occurred in the supreme court of the United States. The statute of England is inapplicable, because it is not connected with other clauses. The demurrer is sustained, and the judgment of reversal must be rendered.

---

[3] See Tate. Dig. tit. "Judiciary Court of Appeals," p. 374.

