ARTHUR BRAITHWAITE v. E. D. CAMERON, *Auditor of the Territory of Oklahoma.*

TERRITORIAL LEGISLATURE—*May Provide Compensation Out of Territorial Treasury for Stenographers and Other Subordinate Employes.* The territorial legislature has no power to provide out of the territorial treasury any compensation for the governor, secretary of the territory or members or officers of the territorial legislature other than that which is provided for them by the laws of the United States, but the legislature of the territory is not prohibited from providing for the payment out of the territorial treasury of compensation to stenographers or other subordinate employes, whose services may be a part of the requisite and necessary expenses of the legislature, and for whose employment the appropriation for the legislative expenses of the territory made by congress out of the treasury of the United States is not adequate.

*Original Proceeding in Mandamus.*

The plaintiff was employed as a stenographer in the service, and under authority of, the last legislature of the territory.   He presented his account and voucher for services to the territorial auditor for allowance and payment from the treasury of the territory.   The audit of the account was declined upon the ground that the legislature was forbidden, under the laws of the United States, to expend funds of the territory for any kind of legislative expenses.   Whereupon the plaintiff applied for a peremptory writ of *mandamus* commanding the auditor to audit the account and authorize its payment.

*Green & Strang,* for petitioner.

*C. A. Galbraith, Attorney General,* contra.

The opinion of the court was delivered by

McATEE, J.:   It is provided by § 6 of the Organic Act—

"That the legislative power of the terrritory shall

extend to all rightful subjects of legislation, not inconsistent with the constitution and laws of the United States, but no law shall be passed interfering with the primary disposal of the soil; no tax shall be imposed on the property of the United States, nor shall the lands or other property of non-residents be taxed higher than the lands or other property of residents, nor shall any law be passed impairing the right to private property, nor shall any unequal discrimination be made in taxing different kinds of property, but all property subject to taxation shall be taxed in proportion to its value : *Provided*, that nothing herein shall be held to prohibit the levying and collecting license or special taxes in the territory, from persons engaged in any business therein, if the legislative power shall consider such taxes necessary."

The power herein given to the legislature includes, subject to certain specified limitations, "all rightful subjects of legislation " Subject to those limitations, the authority given is clear, full, positive and complete. It includes the power of taxation, subject only to the reservations that no tax shall be imposed on the property of the United States, and that all property subject to taxation shall be taxed in proportion to its value, and without unequal discrimination. The full power of taxation residing in the legislatures of the several states is carefully preserved in the proviso that nothing contained in the limitations which "shall be held to prohibit the levying and collection of special taxes in the territory, from persons engaged in any business therein, if the legislative power shall consider such taxes necessary."

The power to legislate upon all "rightful subjects of legislation" is, subject to these limitations, as extensive as that which resides in the legislatures of the several states. One of the subjects of legislation upon which the legislature of a state may rightfully act is the provision for its expenses, and all the matters which it may find is necessary to legislate upon

in order to preserve its own lawful existence and usefulness, and to levy taxes therefor, and to appropriate them to this purpose. The power to so legislate is included among the "rightful subjects of legislation," unless it be prohibited by "the constitution and laws of the United States."

And being so included and given, we do not think that it can be inferred away by any other law of the United States of doubtful significance.

The respondent cites as prohibiting such legislation the law of the United States passed May 18, 1842, contained in section 1888 of the Revised Statutes of the United States, providing that "no legislative assembly of a territory shall, in any instance or under any pretext, exceed the amount appropriated by congress for its annual expenses."

In enacting this law was it the purpose of congress to protect the treasury of the United States against any greater liability than that for which congress had provided in the previous appropriation? Or was it the purpose to provide a measure of protection in behalf of the people of the territory against their own legislature, thus prohibiting that legislature from appropriating out of the fund arising from territorial taxation such compensation to its members, officers and employes as the appropriation previously made by the congress of the United States for legislative expenses of the territory was found to be inadequate to meet?

If the purpose was simply to make it plain that the treasury should not be liable to any greater extent than the amount already appropriated by congress for the annual expenditure by the legislature of the territory, the terms of the statute are adequate and appropriate. Upon the contention, however, that the purpose of the statute was to forbid the appropriation of

any portion of the fund arising from territorial taxation to the payment of compensation to its members, officers or employes, its terms are obscure and doubtful, and are, in our judgment, insufficient and inadequate to negative and to destroy the effect of the grant, contained in the Organic Act, of "legislative power extending to all the rightful subjects of legislation."

The origin, title, construction and purpose of the statute of May 18, 1842, sustains this interpretation. It is an extract from one of the appropriation bills of that year, found in vol. 5 United States Statutes at Large at p. 475, which is an act making appropriations for the civil and diplomatic expenses of government for the year eighteen hundred and forty-two. The act provides in two hundred and twelve items, for as many different appropriations to be made out of the treasury of the United States. Like all the civil appropriation bills, it provides for the payment of the expenses of the various departments of the government—for the department of state, treasury, war, navy, postoffice, surveyors, United States mint, and for many other expenses in the civil and diplomatic service. It also provides for the payment of various expenses of the territorial governments of Wisconsin, Iowa and Florida. By items from No. 108 to No. 112, inclusive, compensation is provided for the governor, judges, secretary, contingent expenses, and compensation for legislative expenses—twenty thousand dollars for the territory of Wisconsin from the treasury of the United States. By items from No. 118 to No. 122, inclusive, an appropriation is made for similar expenses, and in like terms, for the governmental expenses of the territory of Florida, from the treasury of the United States. By items from No. 113 to No. 117, inclusive, appropriations of a like character are made from the United States treasury for the territory

of Iowa.   By item No. 117, $2,175 are provided as compensation for the expenses of the legislative assembly of that territory.   And it is then, by the same item, further  significantly  provided,  by  a  proviso  not found in the appropriations for  the territories of Wisconsin and Florida, as follows:

"And for the arrearages of expenses for the legislative assembly of the territory of Iowa, for the present and previous years, the accounts for which shall first be audited and allowed by the proper accounting officers of the treasury, thirteen thousand four hundred and twenty-one dollars: *Provided*, That no part of this appropriation shall be used for the payment of the members of the said legislative assembly for per diem wages, mileage or extra services, or for stationery for their individual use, nor for any other purpose not authorized by the act of congress establishing the territory of Iowa: *And provided, further*, That the legislative assembly of no territory shall, hereafter, in any instance, or under any pretext whatever, exceed the amount appropriated by congress for its annual expenses."

The closing proviso of that item is the general prohibition which is inserted in the Revised Statutes of the United States.   It redresses a grievance which is stated in the appropriation for the legislature of the territory of Iowa alone, and the grievance is stated in the provision which is made in the former part of the section for the payment of "arrearages of expenses for the legislative assembly of the territory of Iowa, for the present and previous years  *  *  *   $13,421" out of the treasury of the United States.   No mention is made in these items or in any part of the act, of any grievance arising from the over-taxation of or misappropriation of funds belonging to the territory of Iowa, or of any other territory.

The intention of congress in passing this act must dominate its construction.   Chancellor Kent said: "In the exposition of a statute the intention of the law

maker will prevail over the literal sense of the terms; and its reason and intention will prevail over the strict letter. When the words are not explicit the intention is to be collected from the context; from the occasion and necessity of the law; from the mischief felt, and the remedy in view; and the intention is to be taken or presumed according to what is consonant with reason and good discretion." (1 Kent's Commentaries, 461; *Jennings v. Love*, 24 Miss. 249; *Harrison ex parte*, 4 Cow. 63; *People v. Utica Ins. Co.* 15 John. 358; *Strode v. Stafford Justices*, 1 Brock. 162; *State v. Clarksville, etc.* 2 Sneed 88; *Swan v. Buck*, 40 Miss. 268; *Learned v. Corley*, 43 id. 688; *Little Rock, etc. R. R. Co. v. Howell*, 31 Ark. 199; *Matthews v. Commonwealth*, 18 Gratt. 989; *Swartout v. Railroad Co.* 24 Mich. 389; *Russell v. Farquhar*, 55 Tex. 359; *Ezekiel v. Dixon*, 3 Ga. 152; *City v. Schellinger*, 15 Phila. 50; *Commercial Bank v. Foster*, 5 La. Ann. 516; *Kelly's Heirs v. McGuire*, 15 Ark. 555; *Cearfoss v. State*, 42 Md. 406; *Brooks v. Hicks*, 20 Tex. 666; *Wilkinson v. Leland*, 2 Pet. 627, 662; *Taylor v. Palmer*, 31 Cal. 240; *Commonwealth v. Conyngham*, 66 Pa. 99.)

Sutherland on Statutory Construction, § 241, says: "The application of particular provisions is not to be extended beyond the general scope of a statute, unless such extension is manifestly designed. Legislatures, like courts, must be considered as using expressions concerning the thing they have in hand, and it would not be a fair method of interpretation to apply their words to subjects not within their consideration, and which, if thought of, would have been particularly and carefully disposed of. The more literal construction ought not to prevail if it is opposed to the intention of the legislature apparent from the statute; and if the words are sufficiently flexible to admit of some other construction by which that intention can be better effected, the law requires that construction be adopted." (*Caledonian R. R. Co. v. N. British R. R. Co.*

L. R. 6 App. Cas. 122; *Freme v. Clement*, 44 L. T. (N. S.) 399; L. R. 18 Ch. Div. 499; *Walton, Ex parte*, L. R. 17, Ch. Div. 746; *United States v. Bassett*, 2 Story, 399.)

Protection of the treasury of the United States from any future application or liability for ''arrearages of expenses for the legislative expenses of any territory," is plainly the object and the extent of the prohibition. So far as this act is concerned, therefore, the legislature is left free to make additional appropriation out of the fund arising from territorial taxation to the payment of the legislative expenses of the territory.

Up to this time, if this conclusion is correct, the legislature of a territory was authorized to provide for the payment of its own expenses, including compensation of the governor of the territory, and members, officers and employes, and other expenses additional to those which had been provided out of the national treasury by the laws of the United States. And such we understand to have been the state of the law relating to this subject, up to 1873. Upon the 23d of January, 1873, however, congress did legislate for the purpose of prohibiting the legislature of any territory from providing additional or other compensation out of the territorial fund for its governor, members or officers than that which was provided by the laws of the United States, and did so in apt, appropriate and unmistakable terms. By that act of congress, contained in § 1855 of the Revised Statutes of the United States, it was provided that ''no law of any territorial legislature shall ·be made or enforced by which the governor or secretary of a territory, or the members or officers of any territorial legislature, are paid any compensation other than that provided by the laws of the United States."

This act is not amendatory of the act of 1842, contained in § 1888, of the Revised Statutes of the United States, original and independent act, for the first time

legislating to restrict appropriation from the territorial fund, for the purposes therein stated. The passage of this act of congress thus made, and making no reference to the act of March, 1842, is evidence that it had not hitherto legislated for the purposes there declared. This act was not passed for the purpose of explaining or declaring the meaning of the act of 1842, but provided a new and original remedy.

The abuse to be corrected by this enactment could have been no other than the improper appropriation of territorial funds by the legislature and through the influence of those who could have control of, or exercise any influence upon, legislation, and accordingly by the statute forbade the enforcement or enactment of any law whereby the governor, or secretary of the territory, or the members or officers of any territorial legislature, should be paid any compensation additional to that provided by the laws of the United States. This act provided that those who had in their hands the power to legislate, and to appropriate the territorial funds, should not themselves derive any benefit from that power. That was the extent of the limitation therein prescribed. Was it intended by this act to exclude an appropriation by the legislature of a territory from the territorial fund to compensate such employment as that which was performed by the plaintiff? The plaintiff was neither governor, secretary of the territory nor member of the legislature; if the compensation is prohibited to him, it must be prohibited to him upon the theory that he is an "officer." But was he, in discharging the function of a stenographer, such a public "officer" as would be reasonably presumed to be included within the description and prohibition?

"An officer is one who holds an office, or is lawfully invested with an office." (Webster's Dictionary.)

Bouvier, in his Law Dictionary, defines an officer as

·"one who is lawfully invested with an office," and further that "legislative officers are those whose duties relate mainly to the enactment of laws."

Now, can it be said that a stenographer, employed temporarily and not in pursuance of any law providing for his employment in the permanent or continuous discharge of his duty, is an "officer" or that he is "lawfully invested with an office?" Or can it be said that such duties as those which it was his function to perform related mainly to the enactment of laws? On the contrary, the plaintiff discharged merely subordinate duties as an employe. He was not an officer.

Take an example. The clerk of the district court is an officer, because he is lawfully invested with an office; so, also, would his deputy be an officer. But would one be an officer because he was for a time employed in the office of the clerk of the district court, to copy papers, or to temporarily aid in the discharge of the public business? We think not. If in the passage of this act, congress had intended to forbid the legislature to employ any manner of aid or to provide for any of its necessities, in addition to such aids or necessities as are provided for by the laws of the United States, it would not have limited the prohibition to forbidding additional compensation from the territorial fund, to the governor, secretary of the territory, members and officers of the legislature. It is manifest that if such had been its purpose, it would, in the prohibition, have included all manner of compensation by the legislature, from the territorial fund, for any purpose whatsoever connected with the expenses of the legislature.

On the contrary, by the same act of January 23, 1873, congress provided as recited in § 1861 of the Revised Statutes, that—

" The subordinate officers of each branch of every legislative assembly, shall consist of one chief clerk,

who shall receive a compensation of $8 a day, and of one assistant clerk, one enrolling clerk, one engrossing clerk, one sergeant at arms, one doorkeeper, one messenger and one watchman, who shall each receive a compensation of $5 per day during the sessions, and no charge for a greater number of officers and attendants or any larger per diem shall be allowed or paid by the United States to any territory."

And it here made plain that all which was intended. by congress in § § 1888 and 1855 of the Revised Statutes, was that while these territorial legislatures "should not provide for the governor, secretary of the territory, members or officers of the legislature, any other compensation than that provided by the laws of the United States," yet, that as to "the subordinate officers of each branch of the legislature" and their "attendants" that simply no charge "for a greater number of officers and attendants" or any larger per diem should be allowed or paid by the United States to any territory, and the territorial legislature is thus left free to provide out of the territorial fund for the payment of such subordinate officers and attendants and other expenses as are in its own judgment found to be requisite and necessary to the discharge of its duties.

In coming to the conclusion here indicated, we have not neglected to consider that a contrary view has been held by the supreme court of Arizona, in *Osborne v. Clark*, 1 Ariz. 397, and by the supreme court of Idaho in *Stevenson v. Moody*, 2 Id. 239. The former case sustains the contention herein held by the defendant, without argument. In the case of *Stevenson v. Moody*, the argument consists of a recitation of § § 1888 and 1855 of the Revised Statutes, and concludes without analyzing them, or tracing their history, that the territorial legislature has no power to provide for itself or for any of its necessities. The supreme court of the territory of Wyoming is quoted as sustaining

the same view, but the opinion is not printed in the reports of that territory and is inaccessible. The supreme court of this territory is also cited as having held an opinion in consonance with the views of the territories referred to.

While we recognize the force of authority based upon better reasons, we cannot consent to be thus· bound against our own reason and judgment. The peremptory writ of *mandamus* will be allowed.

Dale, C. J., and Scott, J., concurring; Burford, J., Bierer, J., dissenting.