**WICKERSHAM et al. v. SMITH, Territorial Treasurer (PARKS, Governor, et al., Interveners).**

First Division.   Juneau.   May 28, 1927.

No. 2735–A.

**1. Territories ⬦17—Territory of Alaska can exercise only powers granted by Congress.**

Territory of Alaska being organized by Congress of United States is subordinate to laws of United States and can exercise only those powers granted.

**2. Territories ⬦20—Grant of legislative power to Alaska Legislature extends to all rightful subjects of litigation consistent with United States Constitution and laws, subject to specific limitations in statute (Organic Act, §§ 1, 9 [48 USCA §§ 21, 44, 45, 77–79]).**

Grant of legislative power to Legislature of Alaska, contained in section 9 of the Organic Act, extends to all rightful subjects of litigation not inconsistent with Constitution and laws of United States, subject to specific limitations in sections 1 and 9 (48 USCA §§ 21, 44, 45, 77–79 [U. S. Comp. St. §§ 3528, 3536]).

**3. Licenses ⬦1—In Alaska, all taxation is provided for by "licenses" or "occupational taxes."**

There is no direct property taxation in Alaska; all taxation for support of territorial government being provided for by licenses or occupational taxes, which are in nature of privilege granted by the territory to pursue particular occupation or business.

**4. Constitutional law ⬦48—Every intendment favors validity of statute.**

In considering constitutionality of statute, every intendment should be given to its validity, and, before court should declare statute invalid, its invalidity must be clear and convincing.

**5. Constitutional law ⬦45—Court, if convinced of invalidity of statute, should not hesitate to so declare.**

Where court is convinced of unconstitutionality or invalidity of statute, it should not hesitate to so declare.

**6. Territories ⬦28—Legislature cannot appropriate public money for private purposes, but may recognize moral or equitable obligations.**

Legislature, being elected to make laws for public good, cannot appropriate public moneys for purely private purposes; but it may recognize moral or equitable obligations, such as a just man would be likely to recognize in his own affairs, whether by law required to do so or not.

⬦See same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

**7. Territories ⚫28—Appropriation by territorial Legislature for additional salary to secretary to Governor held valid; "officer of the United States" (Const. art. 2, § 2; 5 USCA §§ 66, 70).**

Appropriation by Legislature of territory of Alaska for additional salary for secretary to Governor *held* not void, since such secretary is not an "officer of the United States," as provided by Const. art. 2, § 2, or person whose pay is fixed by law or regulation of United States, so that Rev. St. § 1765 (5 USCA § 70), and 5 USCA § 66, are inapplicable.

**8. Statutes ⚫119(3)—In general appropriation act, all items incident to maintenance of government need not be expressed in title (Organic Act, § 8 [48 USCA § 76]).**

In general appropriation act to pay expenses of territorial government for ensuing biennium, all items of appropriation incident to maintenance of government are not required to be expressed in title by Organic Act, § 8 (48 USCA § 76 [U. S. Comp. St. § 3535]).

**9. Territories ⚫28—In making appropriations, Legislature may determine what is necessary to carry on government and what is public purpose.**

What is necessary to carry on government lies within reasonable discretion of Legislature, only limitation being that appropriations shall be for public purposes; and what is public purpose is also question to be determined by Legislature, and will only be inquired into by courts where there is patent violation of limitation.

**10. Statutes ⚫109—Title of act will be construed liberally to uphold law, on objection that it violates provision that law shall not embrace more than one subject, to be expressed in title (Organic Act, § 8 [48 USCA § 76]).**

Title of act, attacked for violation of Organic Act, § 8 (48 USCA § 76 [U. S. Comp. St. § 3535]), requiring that no law shall embrace more than one subject, which shall be expressed in title, shall be construed liberally for purpose of upholding law, if practicable.

**11. Statutes ⚫119(3)—Title of general appropriation bill, stating it was act to make appropriations for expenses of territory for period named, held sufficiently comprehensive to cover all necessary expenses.**

Title of act, "An act to make appropriations for the expenses of the territory of Alaska for the last three quarters of the fiscal year 1927, beginning April 1 and ending December 31, for the fiscal year ending December 31, 1928, and for the quarter ending March 31, 1929, and for the fiscal year ending June 30, 1929, and declaring an emergency," *held* sufficiently comprehensive to cover all necessary expenses of territory for period named.

⚫See same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

**12. Statutes ⊚⇒109—Where title of statute expresses general purpose, all matters reasonably connected with such purpose are proper parts of statute.**

Where title of statute expresses general purpose, all matters reasonably connected with such purpose, and all measures which are convenient or appropriate or fairly calculated to facilitate accomplishment of that purpose, are proper parts of statute under constitutional requirements.

**13. Statutes ⊚⇒109—Requirement that statute embrace but one subject, expressed in title, is satisfied, where all provisions of law are reasonably connected with one subject, indicated in title (Organic Act, § 8 [48 USCA § 76]).**

Where all provisions of law relate to one subject, indicated in title, and parts of it are incident to it, or reasonably connected with it, or in some sense auxiliary to object in view, requirement of Organic Act, § 8 (48 USCA § 76 [U. S. Comp. St. § 3535]), that every act shall embrace only one subject, which shall be expressed in title, is obeyed.

**14. Territories ⊚⇒28—Appropriation by territorial Legislature in general appropriation act for salary to secretary to Governor, and extra clerk and stenographer for Governor's office, held valid as against contention that they were not authorized by existing law (Laws 1925, c. 60).**

Appropriation by Legislature of Alaska in general appropriation act for salary of secretary to Governor, and for extra clerk and stenographer for Governor's office, *held* valid as against contention that such expenses were not authorized by existing law; it being reasonable to suppose that such expenses were part of budget provided for by Laws 1925, c. 60, especially in view of additional duties, which have been imposed on Governor and secretary by various Legislatures.

**15. United States commissioners ⊚⇒2—United States commissioners are "federal officers" (Const. U. S. art. 2, § 2; Comp. Laws Alaska 1913, § 366).**

United States commissioners are federal officers, as contemplated by Const. U. S. art. 2, § 2, since their appointment is vested by Congress in courts of territory under Comp. Laws Alaska 1913, § 366.

**16. Territories ⊚⇒28—Item of general appropriation act for expenditure to disseminate publicity relative to resources of territory held valid.**

Item of general appropriation act, enacted by Legislature of Alaska, providing for expenditure for publicity purposes, to disseminate publicity relative to resources of territory, *held* valid.

**17. Constitutional law ⊚⇒46(1)—Court will not pass on validity of contingent appropriation until contingency requiring expenditure arises.**

Court will not pass on validity of appropriation, in nature of contingent appropriation for expenditure only when necessary, until contingency requiring expenditure arises.

⊚⇒See same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

**18. Constitutional law ⬅46(1)—Federal District Court is not proper body to advise executive officers of territory as to legality of appropriations before concrete instance arises requiring judicial determination.**

Federal District Court is not advisory body, regularly elected legal officer of territory being proper person to advise executive officers as to legality of appropriations, until concrete instance arises requiring judicial determination of their validity.

**19. Territories ⬅28—Appropriation for per diem for President of Senate and Speaker of House, for supervising preparation of journals of respective houses after Legislature adjourns, held valid (Organic Act, § 11 [48 USCA § 83]).**

Appropriations in general appropriation act by territorial Legislature for per diem for President of Senate and Speaker of House, for supervising preparation of journals of respective houses after Legislature adjourns, *held* valid, since such compensation does not come within limitation of Organic Act, § 11 (48 USCA § 83 [U. S. Comp. St. § 3538]).

**20. Territories ⬅28—Appropriation by territorial Legislature for clerical help to compile, compare, and prepare journals of Legislature held valid.**

Appropriation by territorial Legislature for clerical help to compile, compare, and prepare journals of respective houses of Legislature *held* valid, being for public purpose.

**21. Territories ⬅28—Appropriation for extra clerical help during session of territorial Legislature held valid (Organic Act, §§ 7, 15 [48 USCA §§ 75, 87]; 48 USCA § 1457).**

Appropriation for extra clerical help for Legislature during session *held* not objectionable, as being in conflict with Organic Act of Alaska (48 USCA §§ 75, 87 [U. S. Comp. St. §§ 3534, 3542]), and general laws of United States, since Organic Act, §§ 7, 15, is to be construed in connection with Rev. St. § 1855 (48 USCA § 1457 [U. S. Comp. St. § 3443]).

**22. Territories ⬅28—Appropriation by territorial Legislature for overtime to subordinate officers of Legislature during session held invalid.**

Appropriation by territorial Legislature for overtime to subordinate officers of Legislature during session *held* invalid, since their compensation is fixed by laws of United States, and cannot be increased by Legislature.

**23. Territories ⬅23—Secretary of territory of Alaska cannot be paid any salary, other than that provided by United States (48 USCA §§ 1454, 1457; Comp. Laws Alaska 1913, § 361).**

Under Rev. St. § 1855 (48 USCA § 1457 [U. S. Comp. St. § 3443]), secretary of territory of Alaska, who is officer of United States, appointed by President, pursuant to section 1843 (48 USCA § 1454 [U. S. Comp. St. § 3429]) cannot be paid any salary other than that provided by United States; Comp. Laws Alaska 1913, § 361, being inapplicable.

---

⬅See same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

**24. Territories ⬚⟶20—Acts of territorial Legislature violating limitations of legislative power granted by Organic Act are void (Organic Act [48 USCA § 21 et seq.]).**

Any act of Legislature of Alaska, violating limitations of legislative power given by Organic Act of 1912 (48 USCA § 21 et seq.) is null and void.

**25. Territories ⬚⟶8—Statute relative to fees of secretary of territory, passed before Alaska became territory, held not applicable to Alaska (Act June 19, 1878 [20 Stat. 193]).**

Act June 19, 1878 (20 Stat. 193), providing for payment of fees to secretary of territory for all official duties imposed by territorial Legislature, *held* special act of Congress, applicable only to territories then in existence, and not applicable to secretary of territory of Alaska.

**26. Territories ⬚⟶8—Statute providing for appointment of secretary of territory held general statute applicable to future territories that might be organized (48 USCA § 1454).**

Rev. St. § 1843 (48 USCA § 1454 [U. S. Comp. St. § 3429]), providing for appointment by President of United States of secretary of territory, *held* general statute, applicable not only to territories in existence at time of passage, but to all future territories that might be organized.

**27. Officers ⬚⟶30—Secretary of territory of Alaska is ineligible for appointment to any office under territorial government (48 USCA § 1454).**

Secretary of territory of Alaska, appointed by President of United States, pursuant to Rev. St. § 1843 (48 USCA § 1454 [U. S. Comp. St. § 3429]), *held* ineligible for appointment to any office under territorial government.

**28. Territories ⬚⟶23—Secretary of territory of Alaska held, by acquiescence, de facto officer of territorial government as to duties imposed by territorial Legislature (48 USCA § 1454).**

Secretary of territory of Alaska appointed by President of United States pursuant to Rev. St. § 1843 (48 USCA § 1454 [U. S. Comp. St. § 3429]), though ineligible for appointment to any office under territorial government, *held*, by acquiescence, de facto officer of territorial government as to duties imposed by territorial Legislature, where validity of acts of secretary, acting as officer of territory, had never been questioned.

**29. Territories ⬚⟶28—Appropriations for compensation to secretary of territory of Alaska for services as de facto officer of territory under acts of territorial Legislature held available for such purpose.**

Appropriations for compensation for secretary of territory of Alaska for services performed as de facto officer of territory under acts of territorial Legislature *held* available for such purpose until de facto officer is ousted in manner provided by law, notwithstanding general rule that de facto officer is not entitled to any compensation for services performed as such.

**30. Territories ⟨⟩28—Appropriations for public purpose should, if possible, be upheld, if within law.**

In construing appropriation statute, all appropriations for public purpose should, if possible, be upheld, if within law.

Suit by James Wickersham and others against W. G. Smith, as Territorial Treasurer of the Territory of Alaska, to restrain the payment of certain sums appropriated by the territorial Legislature, in which Geo. A. Parks, as Governor of the Territory of Alaska, and Karl Theile, as Secretary, intervened. On motion for temporary injunction. Injunction pendente lite ordered as to part of appropriations objected to.

James Wickersham, of Juneau, in pro. per.

John Rustgard, Atty. Gen., for defendant.

Hellenthal & Hellenthal, of Juneau, for defendant and interveners.

REED, District Judge. The plaintiff, James Wickersham, on May 6, 1927, filed his bill in equity, seeking an injunction to restrain the defendant Walstein G. Smith, as treasurer of the territory of Alaska, from paying out of the territorial treasury various sums of money appropriated by the Legislature of the territory and contained in the general appropriation act of 1927, on the ground that the appropriations were illegal and void. The specific appropriations objected to and claimed to be illegal by the plaintiff are, as follows:

| | |
|---|---:|
| For the office of the Governor: | |
| Additional salary for the secretary to the Governor, $720 per annum | $1,440 |
| One clerk, at $2,100 per annum | 4,200 |
| One stenographer, at $1,800 per annum | 3,600 |
| Janitor, messenger, and other service at the house to supplement the federal appropriation, $600 per annum | 1,200 |
| Travel and contingent expenses of the Governor to supplement federal appropriations | 2,000 |
| Dissemination of information about Alaska, publication and circulation of pamphlets and booklets, under direction of Governor | 2,000 |
| For entertainment at the executive mansion of officers and representatives of the United States, the states of the Union, or of foreign countries | 2,000 |
| Repairs and improvements to the executive mansion | 1,250 |
| Total | $17,690 |

For office of secretary of the territory:

Salary of secretary of the territory for work car-
ried on under territorial laws, $2,000 per annum        4,000

Salary of chief clerk, $2,640 per annum        5,280

Salary of assistant clerk, $2,100 per annum        4,200

For additional and necessary clerical help for the
biennium        3,600

For office rent for biennium        · 3,120

For contingent expenses, telephone, electric lights,
secretary's bond, etc., $750 per annum        1,500

Total        $21,700

Special legislative expenses:

· For compensation to Bartley Howard for supervi-
sion and preparation of Senate Journal subse-
quent to the session of the Legislature, ten days
at $15 a day        150

For compensation to Sumner S. Smith for supervis-
ing and preparing House Journal subsequent
to the session of the Legislature, 10 days at $15
a day        150

For employment of extra clerical help, including
overtime to the regular employees, Eighth ses-
sion, also employment of special clerical help to
compile, compare, and have printed Senate
Journal; and other contingent expenses, to be
expended under the direction of the Governor
and certified by the President of the Senate, or
so much thereof as may be necessary        1,500

For employment of extra clerical help, including
overtime of regular employees, Eighth session,
also employment of special clerical help to com-
pile, compare, and have printed House Journal,
and other contingent expenses, to be expended
under the direction of the Governor and certi-
fied by the Speaker of the House, or so much
thereof as may be necessary        1,500

Total        $3,300

The plaintiff alleges that he is a taxpayer of the territory, and that the items complained of will be paid out of the territorial treasury by the defendant illegally and in violation of the laws of the United States, unless this court prevents defendant from so doing by its power of injunction; that the said sums will thereby be lost from the public funds and the possession of the defendant as territorial treasurer, and that

their illegal and wrongful payment for unlawful and unauthorized purposes will greatly increase the taxes which this plaintiff and other taxpayers of Alaska are obliged to pay to maintain the government, to their great loss and damage; and that the plaintiff has not, and the other taxpayers similarly situated in Alaska have not, any plain, speedy, or adequate remedy at law to prevent such unlawful and unauthorized expenditure.

At the time of presenting the complaint a motion was presented by the plaintiff for a temporary restraining order pendente lite. On reading the complaint, an order to show cause why an injunction pendente lite should not issue was granted, returnable on May 11, 1927, at 2 o'clock p. m. At the hour set for the return on the order to show cause, there appeared Hon. Karl Theile, secretary of the territory, by his counsel, Hellenthal & Hellenthal, and Hon. Geo. A. Parks, Governor of the territory, separately appeared by the same counsel and moved the court for leave to intervene as having an interest in the matter in litigation. Messrs. Hellenthal & Hellenthal, attorneys, also appeared with the Attorney General of the territory for the defendant Walstein G. Smith, the territorial treasurer, and thereupon the plaintiff objected to the court's granting the motion of the secretary and the Governor of the territory to intervene, on the ground that Hellenthal & Hellenthal were not authorized to appear for the intervening parties. The plaintiff also objected to Hellenthal & Hellenthal's appearing for the territory, on the ground that the Attorney General of the territory was alone authorized to appear on behalf of the territory, or for the treasurer of the territory, and moved that the said attorneys be required to show their authority to enter their appearance as attorneys for the defendant and for the interveners.

The motion was denied, for the reason that, as to the appearance for the interveners, it is to be presumed that their authority to appear for the interveners was authorized from the fact that the complaints in intervention were verified by the interveners under the signature of the above-mentioned attorneys, and, as to the defendant Smith, it appears that the Attorney General of the territory had joined with the attorneys named in entering an appearance, thus disclosing authority for the appearance of the attorneys in both instances. The objection of the plaintiff to the allowance of the intervention was

7 A.R.—34

then overruled, and the complaints in intervention were ordered filed.  The plaintiff then moved to strike the complaints in intervention separately, on the ground that the attorneys had no authority to appear on behalf of the United States or the territory in this proceeding.  This motion was denied for the reason stated, and for the further reason that the complaints in intervention showed that in the case of the secretary of the territory, he was personally as well as publicly interested in the matter in litigation, and because in addition thereto, accompanying the complaint was a request from the Attorney General of the territory for him to appear and defend his interest. In the case of the Governor it appeared that items of the appropriations involving the due enforcement of the laws of the territory were attacked by the complaint, and his interest in the matter in litigation, as a public official, was shown by the complaint in intervention.

A special demurrer was then interposed to the complaints in intervention by the plaintiff on three alleged grounds, namely, that the interveners were public officials of the United States, and had no authority to intervene herein without authority from the Secretary of the Interior or the Attorney General of the United States; that the complaints in intervention do not state facts sufficient to constitute a cause of action in favor of the interveners, and that the court has no jurisdiction of the plaintiff or subject of the action in the complaints in intervention or the plaintiffs therein.  The first and third grounds of demurrer were overruled, but a ruling on the second ground of the demurrer was reserved, as it involved a discussion of the whole subject in controversy.

Also, in pursuance of the order to show cause, a demurrer was interposed to the plaintiff's complaint by the territorial treasurer, alleging that the plaintiff has no legal capacity to sue, and that the complaint does not state facts sufficient to constitute a cause of action.

The first ground of the demurrer is, I take it, that the plaintiff, by the allegations of the complaint, has not shown himself entitled to the relief sought by the complaint.  The argument of counsel for the defendant is based on the proposition that a taxpayer is not entitled to injunctive relief against the executive officers of the government paying out moneys in pursuance of appropriations made by the legislative authority.  In

support of that proposition they cited the case of Commonwealth of Massachusetts v. Mellon, 262 U. S. 487, 43 S. Ct. 597, 67 L. Ed. 1078. That case arose in the Supreme Court of the United States, in an action brought by the state of Massachusetts, for herself and as a representative of her citizens, against the Secretary of the Treasury and others to enjoin the enforcement of the Act of November 23, 1921, 42 Stat. 224 (42 USCA §§ 161–174 [U. S. Comp. St. §§ 9188½–9188½m]), called the "Maternity Act," and in deciding that case the Supreme Court of the United States also decided the case of Frothingham v. Mellon, Secretary of the Treasury, 262 U. S. 447, 43 S. Ct. 597, 67 L. Ed. 1078, being an action brought before the district court of the District of Columbia, to enjoin the Secretary of the Treasury from paying out moneys appropriated by Congress for carrying out the provisions of the act. The Supreme Court, after disposing of the question whether a state, as representative of her citizens, could maintain the action, considered the capacity of Frothingham to bring an action in equity, saying (page 486 [43 S. Ct. 600]):

"The attack upon the statute in the Frothingham Case is generally the same, but this plaintiff alleges in addition that she is a taxpayer of the United States, and her contention, though not clear, seems to be that the effect of the appropriations complained of will be to increase the burden of future taxation and thereby take her property without due process of law. The right of a taxpayer to enjoin the execution of a federal appropriation act, on the ground that it is invalid, and will result in taxation for illegal purposes, has never been passed upon by this court. In cases where it was presented, the question has either been allowed to pass sub silentio or the determination of it expressly withheld"—citing several cases, including Bradfield v. Roberts, 175 U. S. 291–295, 20 S. Ct. 121, 44 L. Ed. 168. "The case last cited came here from the Court of Appeals of the District of Columbia, and that court sustained the right of the plaintiff to sue by treating the case as one directed against the District of Columbia, and therefore subject to the rule, frequently stated by this court, that resident taxpayers may sue to enjoin an illegal use of the moneys of a municipal corporation. * * * The interest of a taxpayer of a municipality in the application of its moneys is direct and immediate and the remedy by injunction to prevent their misuse is not inappropriate. It is upheld by a large number of state cases and is the rule of this court. Crampton v. Zabriskie, 101 U. S. 601, 609 [25 L. Ed. 1070]. Nevertheless, there are decisions to the contrary. See, for example, Miller v. Grandy, 13 Mich. 540, 550.

"The reasons which support the extension of the equitable remedy to a single taxpayer in such cases are based upon the peculiar rela-

tion of the corporate taxpayer to the corporation, which is not without some resemblance to that subsisting between stockholder and private corporation. 4th Dillon, Municipal Corporations (5th Ed.) § 1580 et seq. But the relation of a taxpayer of the United States to the federal government is very different. His interest in the moneys of the treasury—partly realized from taxation and partly from other sources —is shared with millions of others, is comparatively minute and indeterminable, and the effect upon future taxation, of any payment out of the funds, so remote, fluctuating, and uncertain, that no basis is afforded for an appeal to the preventive powers of a court of equity. The administration of any statute, likely to produce additional taxation to be imposed upon a vast number of taxpayers, the extent of whose several liability is indefinite and constantly changing, is essentially a matter of public and not of individual concern. If one taxpayer may champion and litigate such a cause, then every other taxpayer may do the same, not only in respect of the statute here under review but also in respect of every other appropriation act and statute whose administration requires the outlay of public money, and whose validity may be questioned."

The plaintiff, in the case at bar, alleges in paragraph 4 of the complaint that the items complained of will be paid out illegally and in violation of the laws of the United States, unless the Treasurer is enjoined from doing so by this court, and thereby said sums lost from the public funds of the territorial treasury and their unlawful payment greatly increase the taxes which the plaintiff and other taxpayers in Alaska are obliged to pay to maintain the government.

The power of a court of equity to restrain, at the instance of a taxpayer, the imposition of illegal taxes or the unlawful payment of public funds by municipal authorities is based upon the present or future injury to the taxpayer by increasing the burden on him or squandering the property of the taxpayers; it being the theory that the municipality is trustee of the corporate property and the taxpayer the cestui que trust. Whether an action of this nature is limited to municipalities as such, including counties, or can be brought against the state is a more serious question and one on which the courts are divided. As was said by the Supreme Court in the case last cited:

"That question may be considered only when the justification for some direct injury suffered or threatened, presenting a justiciable issue, is made to rest upon such an act. Then the power exercised is that of ascertaining and declaring the law applicable to the controversy. It amounts to little more than the negative power to disregard an unconstitutional enactment, which otherwise would stand in the way of the enforcement of a legal right. The party who invokes the

power must be able to show, not only that the statute is invalid, but that he has sustained or is immediately in danger of sustaining some direct injury as the result of its enforcement, and not merely that he suffers in some indefinite way in common with people generally. If a case for preventive relief be presented, the court enjoins, in effect, not the execution of the statute, but the acts of the official, the statute notwithstanding. Here the parties plaintiff have no such case. Looking through forms of words to the substance of their complaint, it is merely that officials of the executive department of the government are executing and will execute an act of Congress asserted to be unconstitutional; and this we are asked to prevent. To do so would be not to decide a judicial controversy, but to assume a position of authority over the governmental acts of another and coequal department, an authority which plainly we do not possess."

Judge Amidon, in Scott v. Frazier (D. C.) 258 F. 669, which was a suit in equity to restrain the defendants, state officers, from paying out public funds from the state treasury, amounting to several hundred thousand dollars, says:

"It may be doubted whether taxpayers may maintain a suit against state officers to vindicate alleged rights of a state. I have been unable to find any authority that would support such a doctrine. Such suits have been confined to actions against municipal officers to vindicate the rights of cities. Such are all the cases cited by Judge Dillon in his work on Municipal Corporations at section 1579. The reasons which permit such suits in the case of municipal corporations have no application to states. Municipal corporations exist under special charters and have only such powers of taxation as are specifically conferred upon them. They have many of the qualities of a private corporation and the right to maintain taxpayers' suits has been rested upon the same ground as the right of stockholders to maintain similar suits in behalf of a private corporation. States are not municipal corporations. Their powers are not defined by charter. They possess all powers, except as they are limited by the state and federal Constitutions. This is especially true of their power to tax. The power to maintain taxpayers' suits, even against municipal officers, has been denied by the courts of New York, Massachusetts, and several other states. Dillon, § 1585 et seq. I can find no justification for extending the doctrines to actions against state officers."

The doctrine cited by Judge Amidon is followed, so far as my investigation has reached, by a majority of the states of the Union. In State v. Frear, 148 Wis. 456, 134 N. W. 673, 135 N. W. 164, L. R. A. 1915B, 569, 606, Ann. Cas. 1913A, 1147, the question was considered by the Supreme Court in a very elaborate opinion, in which an action by a taxpayer to restrain the paying out of public moneys by the auditing officers of the state was dismissed, the court saying:

"This seems to be a taxpayers' action pure and simple, brought in the circuit court to stay the hands of state officers from paying moneys out of the state treasury. We have already held in this opinion that no taxpayer's action can be maintained in the Supreme Court against the auditing or disbursing officers of the state. If such relief is sought, it must be in an action by the state itself, either brought by the Attorney General, or, in case of his refusal, by authority of the court itself, upon the relation of a private citizen. It would seem, a fortiori, that no taxpayer's action shall be entertained in the circuit court where the purpose is to halt the auditing and disbursing officers of the state. We regard this as the better administration. It is enough that this court has the power to authorize such action if the exigency demands [it]. To divide up that power and scatter it among the trial courts of the state, and allow every such court to judge of the exigency, might well lead to the bringing of many improvident actions."

A very vigorous dissenting opinion, to a part of the majority decision, was rendered by Judge Timlin, who says, in commenting upon the authority of the taxpayer to maintain an action against the state officials for the payment of funds from allegedly unconstitutional appropriations:

"It has been sometimes said by law writers and courts that this rule rested upon the consideration that, if one suit could be maintained in such case, each person affected might also bring suit and thus the defendant be ruined by litigation. This consideration has special significance and force in a state where the law permits suits to be brought by private persons against administrative officers charged with the 'administration of' law. Few officers would attempt an efficient administration at such risk, and the ultimate result must be either injustice or inefficiency. But there is another reason for the rule, which lies deeper and upon a broader foundation of governmental policy. That is the policy which places the prosecution of public wrongs in the hands of the public prosecutors and out of the hands of those who may be actuated by private revenge or gain, malice, or political intrigue. * * * If the state as a sovereign is to have its proper and lawful recognition in our jurisprudence, it is, in the absence of statute, subject to no defense of laches, no limitation of time, and no liability to suit, and it must also be regarded as the repository of governmental policy and political discretion. When and how it will assert and enforce its sovereign prerogatives is often a political question, a matter of state policy, and to leave these great questions in the hands of every private litigant has a tendency to create confusion in jurisprudence, lack of wisdom in state policy, and contempt for authority."

In the case of Jones v. Reed, 3 Wash. 57, 27 P. 1067–1069, the Supreme Court of the state of Washington, by Justice Dunbar, in discussing the question of the right of a taxpayer to

maintain an action against state officials to restrain the misappropriation of public funds, after noting the conflict of authorities, says in effect that such action will lie in a court of equity to restrain the officers of a municipal corporation by the weight of modern authority, and then continues:

"The Supreme Court of the United States has spoken on this subject in Crampton v. Zabriskie, 101 U. S. 601 [25 L. Ed. 1070]. The doctrine was thus laid down by Justice Field: 'Of the right of resident taxpayers to invoke the interposition of a court of equity to prevent an illegal disposition of the moneys of the county, or the illegal creation of a debt which they in common with other property holders of the county may otherwise be compelled to pay, there is at this day no serious question.' It will be observed, however, that this case falls short of asserting the doctrine claimed here by the respondent, that courts of equity will restrain the action of state officers in matters of public concern on the petition of a taxpayer who shows no special interest; nor will the language or argument of the court bear any such construction. On the other hand, it is based on the relationship of the taxpayer to the municipal, or quasi municipal, corporation. Indeed, of all the cases cited by the respondent, not one case goes beyond the doctrine laid down in Crampton v. Zabriskie, so that it will not be necessary to review them here. Nor have we been able to find a case which extends the doctrine beyond that case. In all the cases reported, the restraining order has been asked against a county, town, city, or district officers.

"It is argued by respondent that, notwithstanding the absence of authority, there is no difference in principle between restraining county officers and state officers, in matters of public concern, on the prayer of a taxpayer. The principle upon which the doctrine in regard to municipal, or quasi municipal, corporations is based, flows from its analogy to a well-settled doctrine in equity governing private corporations, where each stockholder has an interest in the property of the corporation, and may interfere to protect the corporate funds from the illegal or fraudulent acts of its officers. * * * But this reasoning cannot apply to a state government. The county is a quasi corporation; the state is a sovereignty. The county only possesses such powers as the Legislature of the state confers upon it. Its revenues, its property, its very existence, depend upon statutory enactment. It can be enlarged, dismembered, or annihilated, at the will of the state."

Whether a like rule applies to the territory is a question that requires serious consideration. A territorial organization is more comprehensive than a municipal or county organization, and whether or not the rule approved in the cases cited applies to the territory is a matter on which I am very much in doubt. The territory organized by the Congress of the United States

is subordinate to the laws of the United States and can exercise only those powers granted. The grant of legislative power to the Legislature contained in section 9 of the Organic Act (48 USCA §§ 44, 45, 77–79 [U. S. Comp. St. § 3536]), extends to all rightful subjects of litigation not inconsistent with the Constitution and laws of the United States, subject to the specific limitations in sections 1 (48 USCA § 21 [U. S. Comp. St. § 3528]) and 9 of the act. The power of the Legislature is not limited in the assessment and collection of taxes and revenue or the power to disburse the same for the carrying on of the territorial government. It has the same power in that respect as is exercised by the states except as inhibited by the special or general laws of the United States applicable to the territory.

The legislative power of the states in that regard is limited by the Constitution of the United States and the general laws of the United States applicable to the states, and where they may be in conflict with either the Constitution or the laws of the United States applicable to the states under the authority of the Constitution, they are invalid. In the one case the power is limited by the qualification of the Constitution and laws of the United States applicable to the territory as well as the prohibitions of the Organic Act. In the other there is the same constitutional prohibition as well as prohibition of legislation within the delegated powers of Congress. As was said by Judge Dunbar, in Jones v. Reed, a territory is not like a state in its sovereignty. It possesses only such powers as are granted by the Congress of the United States. Its revenues, its property, and its very existence depend upon the will of Congress. It can be enlarged or annihilated at the will of Congress.

So, whether a taxpayer can invoke the interposition of a court of equity to compel the officers of a territory to do their duty, or restrain them from illegally increasing the burden of taxation by squandering the public funds of the territory, is a serious question, especially in the territory of Alaska, where, as is well known, there is no direct property taxation, but all taxation for the support of the territorial government is provided for by licenses or occupational taxes, which taxes are in the nature of a privilege granted by the territory to pursue a particular occupation or business. The point was not argued

by counsel on either side, although requiring careful consideration, and I am unwilling to pass upon the point at this stage of the case, being merely an application for a temporary restraining order, and I do not deem it necessary to pursue the subject further.

The territorial officers have sought the opinion of the court on the several items of the appropriations, and the Attorney General of the territory has submitted a statement of the questions involved, without expressing an opinion thereon, and seeks a decision of the court, not only on the validity of the appropriations involved, but other questions incident thereto. For this reason, and the further reason that, in view of the conflict of opinion as to the validity of the several appropriations under the statute and the importance of the issues raised to the territorial government, I deem it necessary that a decision on the appropriations involved be had for the future guidance of the territorial officers. The gravity of the questions raised as to the appropriations, as appears from the intervening complaints of the Governor and the secretary of the territory, is such that the whole system of the territorial government is in jeopardy, should these appropriations be declared invalid.

In approaching the subject of the constitutionality of a statute regularly enacted by legislative bodies, several canons of construction are to be considered. One is that every intendment should be given to the validity of the statute, and before the court should declare the statute invalid its invalidity must be clear and convincing. If the court is in doubt, that doubt should be resolved in favor of the validity of the statute. If, however, the court is convinced of the unconstitutionality or invalidity of the statute, it should not hesitate to so declare. As to appropriations, it is a canon that the Legislature is elected to make laws for the public good, and not for the benefit of individuals. It has control of the public moneys, and should provide for their disbursement for public purposes only. Cooley, Const. Lim. 184. In other words, the Legislature has not the power to levy taxes or make appropriations of public moneys for purely private purposes; yet, in making appropriations of public moneys, the Legislature is not confined within the strict limits of what in cases between individuals would be considered a legal obligation, but may recognize moral or equitable obligations, such as a

just man would be likely to recognize in his own affairs, wheth-er by law required to do so or not.  Cooley, Taxation, § 79.

The plaintiff herein contends that the Legislature has not passed any law creating the obligation or authorizing the appropriations for the uses objected to and that there is no law authorizing the same except as to the secretary's salary; that the Legislature has no power to create obligations authorizing the appropriation of public moneys from the territorial treasury, except by enactment of law in the manner and form prescribed by the Organic Act, and that the Legislature has not enacted any law authorizing the appropriations, and that the appropriations are void, because they are made without the authorization of a pre-existing law, citing in support of this contention section 1760, R. S. 1878 (5 USCA § 52), and a number of cases from Colorado, none of which cases is pertinent to the conclusion reached by the plaintiff.  Section 1760, R. S. 1878, is a section of a statute of the United States regulating the payment of moneys to employees, and reads as follows:

"No money shall be paid from the treasury to any person acting or assuming to act as an officer, civil, military, or naval, as salary, in any office when the office is not authorized by some previously existing law, unless such office is subsequently sanctioned by law."

The only construction to be given to this section is that it denies the payment of moneys from the United States Treasury to any person assuming to act as an officer of the United States without the office having been created or subsequently authorized by law.  The case cited from Kansas of Bailey v. Kelly, 70 Kan. 869, 79 P. 735, passes on the question whether an appropriation contained in the general appropriation bill for maintaining the executive mansion authorized the disbursement of part of the appropriation for the purchase of provisions to be used there and it arose on mandamus proceedings to compel the treasurer to make payment of a certain sum for entertainment in the executive mansion.  The court, after discussing the effect of the contention, stated that such an appropriation would be to increase the compensation of the Governor of the state during his term of office and was void as being in contravention of the constitutional provision prohibiting any increase of compensation to the Governor during his term of office.

The decision in Re Breene, 14 Colo. 401, 24 P. 3, a case decided by the Supreme Court of Colorado, is to the effect that a section of the Revenue Act enacted by the Legislature, prohibiting county treasurers from lending public moneys was void as being in violation of the constitutional provision that no bill, except general appropriation bills, shall be passed containing more than one subject, which shall be clearly expressed in its title. But "if any subject shall be embraced in any act which shall not be expressed in the title, it shall be void only in so much thereof as is not expressed"; the court holding that the provision prohibiting county treasurers from lending public moneys was void, as not being germane to the title of the act providing for the levy and collection of the taxes. The other cases cited (Collier v. Henderson, 18 Colo. 259, 32 P. 417, and In re House Bill 168, 21 Colo. 46, 39 P. 1096), both Colorado cases, turned upon section 32, art. 5, of the Constitution of the state of Colorado, providing that the general appropriation bill shall embrace nothing but the appropriations for the ordinary expenses of the executive, legislative, and judicial departments of the state, interest on the public debt and for public schools, and that all other appropriations shall be made by separate bills, each embracing but one subject.

I am unable to discover any other case supporting the contention of plaintiff as stated by him, as to the necessity of a prior authorization for an appropriation by an act of the Legislature before such appropriation could be included in the general appropriation bill for the expenses of the territory. The Organic Act itself does not so limit the general appropriations by the Legislature of the territory. The further question is raised that the appropriation bill if the appropriations are valid embrace more than one subject, which is not specified in the title. This contention I will discuss later on.

The specific appropriations objected to are, first, those appropriated in the general appropriation bill for the expenses of the Governor's office. The title of the bill (House Bill No. 97) is:

"An act to make appropriations for the expenses of the territory of Alaska for the last three quarters of the fiscal year 1927, beginning April 1 and ending December 31, for the fiscal year ending December 31, 1928, and for the quarter ending March 31, 1929, and for the school year ending June 30, 1929, and declaring an emergency."

The act then appropriates the sums set forth in the separate schedules for the various offices of the territorial government, or so much thereof as shall be found necessary for the expenses of the territory for the period mentioned in the title of the act. The first schedule designated is for the office of the Governor. It is to be noted that the appropriation is for the expenses of the territory to the amounts stated and only to the extent thereof that shall be found necessary. The limitations are that the sums appropriated are for the expenses of the territory in the conduct of the offices or for the services which may be performed, or, having been performed, only to the amount found to be necessary by the auditing officers. The first appropriation scheduled is for the office of the Governor, and consequently the appropriation is limited to such expenses of the Governor's office as may be found to be necessary on behalf of the territory.

The first item in this schedule is for additional salary for the secretary to the Governor, in the amount of $1,440 for the biennium ending March 31, 1929. It is urged that there is no existing law authorizing this appropriation, and that, if its presence in the appropriation bill authorized its payment, the bill would be void as being in violation of section 8 of the Organic Act (48 USCA § 76 [U. S. Comp. St. § 3535]), which provides that no law shall embrace more than one subject which shall be expressed in its title; that section 11 of the Organic Act (48 USCA § 83 [U. S. Comp. St. § 3538]) provides that no person holding a commission or appointment under the United States shall be a member of the Legislature or shall hold any office under the government of the territory and that therefore the appropriation is void for that reason; that by the general appropriation bill of Congress for the Department of the Interior there was appropriated the sum of $2,800 for clerk hire for the Governor's office, and that the payment of this additional sum appropriated by the Legislature would be a violation of the general laws of the United States and particularly section 1765, R. S. 1878 (5 USCA § 70), and section 66 et seq. of the Code of 1926. Section 1765, R. S., provides:

"No officer in any branch of the public service, or any other person whose salary, pay, or emoluments are fixed by law or regulations, shall receive any additional pay, extra allowance, or compensation, in any form whatever, for the disbursement of public money, or for

any other service or duty whatever, unless the same is authorized by law, and the appropriation therefor explicitly states that it is for such additional pay, extra allowance, or compensation."

The inhibition in this section of the statute is that no officer in any branch of the public service, or any other person whose salary, pay, or emoluments are fixed by law or regulation, shall receive additional compensation in any form for any other service, unless the same is authorized by law.

This refers, in my opinion, to a claim for compensation from the United States for services performed in its behalf. This interpretation of the statute is borne out by the exception in section 66 of title 5 of the Code of the United States, 1926, providing that no government officer or employee shall receive any salary in connection with his services as such official employee from any source other than the government of the United States, except as may be contributed out of the treasury of any state, county, municipality, etc. This last section impliedly allows salaries to be paid to employees from sources other than private sources, in effect denying or prohibiting any officer or official of the United States from receiving any compensation whatever from private sources. The statute is further limited in its prohibition to those officers of the United States whose salary, pay or emoluments are fixed by law or regulation. It, therefore, can apply only to officers of the United States, or persons whose salary, pay, or emoluments are fixed by law or by regulations of the United States.

This leads us directly to the question whether the secretary to the Governor is an officer of the United States, or a person whose salary, pay, or emoluments are fixed by any law or regulation of the United States. It is evident that the secretary to the Governor is not an officer of the United States, as provided by the Constitution. Article 2, § 2. This article provides that:

"The President shall  *  *  *  have power, by and with the advice and consent of the Senate, to make treaties,  *  *  *  and he shall nominate, and by and with the advice and consent of the Senate, shall appoint ambassadors  *  *  *  and all other officers of the United States, whose appointments are not herein otherwise provided for, and which shall be established by law; but the Congress may by law vest the appointment of such inferior officers, as they think proper, in the President alone, in the courts of law, or in the heads of departments."

The Secretary to the Governor is not an officer provided for in any law of Congress, nor is his an appointment delegated to the President alone or to any heads of departments as such by any law of Congress. He is simply an employee of the Governor's office, for whose salary no fixed sum is appropriated by the United States, and he is without tenure of office. See Burnap v. United States, 252 U. S. 512–516, 40 S. Ct. 374, 64 L. Ed. 692. The Supreme Court therein says:

"The distinction between officer and employee in this connection does not rest upon differences in the qualifications necessary to fill the positions or in the character of the service to be performed. whether the incumbent is an officer or an employee is determined by the manner in which Congress has specifically provided for the creation of the several positions, their duties and appointments"—citing a number of cases.

In Martin v. United States, 168 F. 198–203, approved by the Supreme Court, the Circuit Court of Appeals says:

"Because the defendant's services were secured under authority granted to the Secretary of the Interior to employ assistants, because his position was never made an office by law, because it had neither duration nor tenure, because its duties were not prescribed, nor its emoluments fixed, by law, and because it was without greater dignity, importance, and independence than the positions of many other employees, and it had much less of either than many inferior offices of the United States have, our conclusion is that the defendant was not an officer of the United States."

So, in the case at bar, because the secretary to the Governor is not an officer provided for in any law of Congress, and because his appointment has not been delegated to the President alone, nor delegated to any head of a department by any law of Congress, and because he has no tenure of office, and because there is no fixed emoluments provided by any law of the United States, I must conclude that he is not an officer nor a person whose pay or emoluments are fixed by law or any regulation of the United States, and that he does not come within the inhibitions of section 1765, R. S. 1878, nor within the provisions of section 66 of the Code of the United States, 1926.

I therefore conclude that the appropriation for the salary of the secretary to the Governor is not void, for the reason that there is any conflict with section 1765 or because of any prohibition in any of the general laws of the United States.

But it is urged that the appropriation is illegal, for the reason that, if a valid appropriation, it is not expressed in the title of the act. The act is the general appropriation act to pay the expenses of the territorial government for the ensuing biennium, and all items of appropriation which are incident to the maintenance of the government need not be expressed in the title. If the title of the act is comprehensive, covering the subject-matter of the act, and the items of appropriation are necessary expenses of the government, then the title is sufficient. What is necessary to carry on the government lies within the reasonable discretion of the Legislature. The only limitation is that the appropriations shall be for public purposes, and what is a public purpose is also a question to be determined by the Legislature, and will only be inquired into by the courts where there is a patent violation of the limitation. The provision of section 8 of the Organic Act that no law shall embrace more than one subject, which shall be expressed in its title, is contained in many constitutions of the states of the Union. It is universally held that the title of an act which is attacked for a violation of this constitutional provision shall be construed liberally, for the purpose of upholding the law, if practicable, so as not to embarrass the Legislature by a construction unnecessary to the accomplishment of the beneficial purposes for which it was enacted.

The title of the general appropriation bill is that it is an act to make appropriations for expenses of the territory for the last three-quarters of the fiscal year and subsequently, and it is sufficiently comprehensive to cover all necessary expenses of the territory for the period named. See Commonwealth v. Brown, 91 Va. 762, 21 S. E. 357, 28 L. R. A. 110; State ex rel. Jackson v. Topeka Club, 82 Kan. 756, 109 P. 183, 29 L. R. A. (N. S.) 722, 20 Ann. Cas. 320; Hyman v. State, 87 Tenn. 109, 9 S. W. 372, 1 L. R. A. 497. If the title of the statute expresses a general purpose, all matters reasonably connected with that purpose, and all measures which are convenient or appropriate or fairly calculated to facilitate the accomplishment of that purpose, are proper parts of the statute under the constitutional requirements. Burrows v. Delta Transportation Co., 106 Mich. 582, 64 N. W. 501, 29 L. R. A. 468. If all the provisions of the law relate to one

subject, indicated in the title, and parts of it are incident to it
·or reasonably connected with it or in some reasonable sense
auxiliary to the object in view, the constitutional requirement
that every act shall embrace only one subject which shall be ex-
pressed in its title is obeyed. Christy v. Elliott, 216 Ill. 31, 74
N. E. 1035, 1 L. R. A. (N. S.) 215, 108 Am. St. Rep. 196, 3 Ann.
Cas. 487.

I am of the opinion that the title of the act under considera-
tion is sufficiently comprehensive and while embodying a num-
ber of appropriations apportioned to the different offices of
the territory for defraying the expenses of the territorial gov-
ernment for the ensuing biennium, all the appropriations are
germane to the subject of the act as expressed in the title.

But it is said that the expenses objected to are not author-
ized by any existing law and that therefore the appropriations
for expenses not authorized constitutes new legislation not
embraced in the title. This is a refinement of reasoning which
requires a strict construction of the provisions of the Or-
ganic Act which is not in consonance with the weight of au-
thority. The statutes of the territory (chapter 60, Laws of
1925) provide for a budget of the probable expenses of the
territory for the ensuing biennium, to be prepared by the
territorial treasurer and submitted to the Legislature. It is
reasonable to suppose that the appropriations mentioned in
the complaint, being a part of the general appropriation bill,
were submitted to the Legislature as a part of the budget
so prepared, and that the Legislature considered and approved
the items submitted and incorporated them into the appro-
priation bill as a necessary part of the expenses of the terri-
tory, basing their conclusion on the duties imposed on the
officers and employees of the territory under its laws and the
customary workings of the territorial government.

In viewing the administration of the territorial government,
as disclosed by the statutes of the territory, the most promi-
nent feature obtaining is that duties have been imposed upon
the Governor and the secretary of the territory and other fed-
eral officers appointed by the President, by the territorial Leg-
islature not comprehended in their duties as federal officials.
Some of these duties were imposed by the first Legislature of
1913, and as each session of the Legislature met biennially
thereafter, other statutory duties were imposed not only on

these but other federal officials. In the year 1913 the duties of poll tax collector were imposed on the United States commissioners of the territory. United States commissioners are federal officers as contemplated by the federal Constitution, article 2, § 2, for the reason that their appointment is vested by Congress in the courts of the territory. Section 366, C. L. A. 1913.

In 1914 the case of Callaham v. Marshall (C. C. A.) 210 F. 230, arose over the attempt of Marshall to collect the poll tax of Callaham, in pursuance of the statute of the Legislature of the territory passed in 1913. Our Circuit Court of Appeals decided that Marshall, holding an appointment under the United States, was ineligible to any office under the territorial government, because of the provision contained in section 11 of the Organic Act to the effect that no person holding a commission or appointment under the United States shall be a member of the Legislature or shall hold any office under the government of said territory. Then Congress passed the Act of August 29, 1914 (48 USCA §§ 91, 121 [U. S. Comp. St. § 3544a]) entitled "An act to amend an act entitled 'An act creating a legislative assembly in the territory of Alaska and conferring legislative power thereon,'" etc. This act provides, so far as is material to this controversy, that nothing in that act of Congress entitled "An act creating a legislative assembly," etc., shall be so construed as to prevent the courts from enforcing all laws passed by the Legislature within the power conferred upon it the same as if such laws were passed by Congress, nor to prevent the Legislature from passing laws imposing additional duties, not inconsistent with their present duties of their respective offices, upon the Governor, marshal, etc., and providing the necessary funds for the enforcement of such duties.

Since the passage of this act, it has been universally held that the duties imposed on the Governor theretofore as a member of territorial boards and as auditing officer of the territory were validated, and thereupon other and further duties were imposed as each Legislature convened, so that the major portion of the affairs of the territory are administered through the Governor's office. The Legislature thereby imposes not only extra work upon the Governor, but upon the employees of his office. These facts are set forth in substance in the

complaints of intervention by the Governor and must have been considered by the Legislature as determining what compensation was due the employees performing the extra labor in the Governor's office, and that the expense flowing from such extra duties so imposed should be compensated for by appropriations for the secretary to the Governor for additional duties imposed on him and for the employment of an extra clerk and a stenographer to meet the expense of performing duties imposed by the territory. The appropriation for janitor service falls in the same class, except that it becomes available only if the federal appropriation is insufficient to compensate him for messenger service in performing duties devolving upon the Governor under the territorial laws.

I am of the opinion, therefore, that the appropriation for the salary of the secretary to the Governor and the appropriations for the Governor's office for an extra clerk and a stenographer are valid. I am further of the opinion that the appropriation for publicity purposes, or so much thereof as is necessary, is not objectionable. The dissemination of publicity relative to the resources of the territory has been an adjunct of the Governor's office ever since the territorial government was organized. It is for a public purpose, having in view the development of the dormant resources of the territory, and being for a public purpose, and resulting in the imposition of extra work and expense, should be paid for. The appropriation for the travel expenses of the Governor, to supplement the federal appropriation for the same purpose, is payable only in reimbursement for expenses incurred in carrying out the territorial laws and becomes available only when necessary for that purpose and when not chargeable to the federal appropriation or when that appropriation is insufficient and not available for such expenses.

The last two items in the appropriation for the Governor's office, one for the entertainment of representatives of the United States, etc., in the amount of $2,000, and for repairs and improvements to the executive mansion, in the amount of $1,250, are in the nature of contingent appropriations for expenditure only when necessary. Whether or not an expense against the territory will be incurred under these appropriations is uncertain. The appropriations are made for contingency only, arising in the future, and are available only

when necessary. Until the contingency arises, I do not deem it necessary to pass upon their validity. While the Attorney General has requested the court's advice as to these appropriations, the court is not an advisory body. The regularly elected legal officer of the territory is the proper person to advise the executive officers of the territory as to the legality of the appropriations, and until a concrete instance arises, requiring a judicial determination of the validity of these appropriations, the court will not interfere with the disbursement of funds therefrom by the executive branch of the government, provided there is a law authorizing the appropriation.

As to the appropriation for legislative expenses, it is urged that this appropriation is invalid as a whole, as being in violation of the provisions of section 7 of the Organic Act (48 USCA § 75 [U. S. Comp. St. § 3534]), as supplemented by section 15 thereof (48 USCA § 87 [U. S. Comp. St. § 3542]). It is also pointed out that it contravenes section 1888, R. S. U. S. 1878 (48 USCA § 1470 [U. S. Comp. St. § 3477]). Section 7 of the Organic Act refers to the organization of the Legislature and provides for the election, by each of the two houses, of their presiding officers and the election of subordinate officers mentioned in section 1861, R. S. 1878, and their compensation as therein fixed. The section concludes with this proviso:

"That no person shall be employed for whom salary, wages, or compensation is not provided in the appropriation made by Congress."

Section 15 of the Organic Act, after providing for appropriations by Congress annually in a sufficient amount to pay the members and authorized employees of the Legislature, the printing of the laws and other incidental expenses thereof, and the disbursement of the amount appropriated under the direction of the Governor, provides:

"And no expenditure, to be paid out of money appropriated by Congress, shall be made by the Governor or by the Legislature for objects not authorized by the acts of Congress making the appropriations, nor beyond the sums thus appropriated for such objects."

Section 1888, R. S. 1878, provides that:

"No legislative assembly of a territory shall, in any instance or under any pretext, exceed the amount appropriated by Congress for its annual expense."

The appropriation objected to consists of several items, but not all of the items appropriated as special legislative expenses. The first two objected to are the appropriations for per diem for the President of the Senate and the Speaker of the House for services to be performed by them in the supervision and the preparation of the journals of the respective houses. The contention of counsel for the plaintiff is that these appropriations are invalid, because they are in conflict with the provisions of the Organic Act quoted and section 1855 of the General Laws of the United States (48 USCA § 1457 [U. S. Comp. St. § 3443]) limiting the legislative powers of the Legislature.

The compensation of legislators of the territory of Alaska is a per diem compensation, payable for attendance during the term that the Legislature is in session only. If a member is not in attendance while the Legislature is in session, he receives no per diem for the period of his absence. After the Legislature adjourns, if he performs services for the territory at the instance of territorial officials, under the sanction of law, I see no inhibition against his receiving compensation therefor. He is not acting during the session for which compensation is made by the United States, nor does the compensation come within the limitation of section 11 of the Organic Act. The object of the appropriation is that the legislative journals become a permanent and correct record of the transactions of the legislative assembly, and is for a public purpose, and I see no objection to the appropriations for services to be rendered by the President of the Senate and the Speaker of the House after the session of the Legislature is adjourned, in making a permanent record of the transactions of the session.

The further appropriations for clerical help to compile, compare, and prepare the journals for printing come within the same class, being for a public purpose, and I deem it within the discretion of the Legislature. The item therein for extra clerical help during the session is not objectionable, as being in conflict with the Organic Act of the territory and general laws of the United States. The proviso in section 7 is to be construed in connection with sections 15 and 1855, R. S., and means that no officer as such, other than those whose compensation is provided for by Congress, shall be employed. It cannot mean that extra clerks and stenographers employed to assist the enrolling or engrossing clerks shall not be employed by

the Legislature, if the Legislature provides for their payment. The only reasonable interpretation of the statute is a limitation on the number of subordinate officers of the Legislature and that the two sections of the statute referred to do not refer to temporary assistance afforded the subordinate officers when needed to expedite necessary work connected with legislative enactments.

The reasoning of the Supreme Court of New Mexico in the well-considered case of Baca v. Perez, 8 N. M. 187, 42 P. 162, and that of the territory of Oklahoma, in Braithwaite v. Cameron, 3 Okl. 630, 38 P. 1084, considering the force of sections 1861 and 1888 of the Revised Statutes, apply with full force to the proviso of section 7 of our Organic Act, and, in my judgment, are conclusive that the Legislature has power, in case of necessity, to employ persons to assist the regularly' authorized employees in the performance of duties incident to legislation authorized to be enacted. It is unnecessary to quote these decisions, for they are familiar to all who have considered the subject. They have been known to and acted upon by territorial Legislatures as correct expositions of the law ever since they were promulgated, nor has Congress or any individual since, to my knowledge, raised any objection to such employment.

That part of the appropriation for overtime to the subordinate officers of the Legislature during the session, in my opinion, is invalid, for the reason that their compensation is fixed by the laws of the United States for their services and cannot be increased by the Legislature. In taking the positions as subordinate officers of the Legislature, authorized by Congress, for which their per diem is fixed by law, they become employees of the government of the United States, and impliedly agree to perform services assigned to them as such subordinate officers for the compensation fixed by the laws of Congress, and the Legislature cannot lawfully increase the compensation as impliedly agreed upon.

*Appropriations for the Office of the Secretary.*—The secretary of the territory is an officer of the United States, appointed by the President of the United States, pursuant to section 1843, R. S. (48 USCA § 1454 [U. S. Comp. St. 3429]), and the question clearly arises, in view of the prohibition of section 11 of the Organic Act, whether he can receive compensa-

tion from the territory. in addition to compensation fixed by
the Congress of the United States, for duties performed on
behalf of the territory. The objections raised to this appro-
priation are, first, that it conflicts with the proviso of section 11
of the Organic Act that no person holding a commission or
appointment under the United States shall be a member of the
territorial Legislature, or shall hold any office under the govern-
ment of the territory; second, that the appropriation is void,
as being in conflict with section 1855, R. S. 1878, providing
that no law of any territorial Legislature shall be made or en-
forced by which the Governor or secretary of the territory or
the members or other officers of any territorial Legislature are
paid any compensation other than that provided for by the
laws of the United States; third, that it conflicts with section
361, Compiled Laws of Alaska, reading:

"In case the law requires or authorizes any service to be performed
or any act to be done by the secretary of the district of Alaska, and
there is no provision of law requiring the payment of a fee for such
service by the person for whose benefit the same is performed, the
Secretary of the Interior may prescribe such fees for said service as
he may deem proper."

Prior to the enactment of the Organic Act the government
of the territory was vested in federal officials only, under laws
enacted directly by Congress. There was no territorial gov-
ernment, like that provided for other territories of the United
States. No authority was vested by Congress in the inhabit-
ants of the territory to enact any law for the government of
the territory. All power for that purpose was reserved to Con-
gress and the executive officers, appointed by the President,
pursuant to the acts of Congress, represented the United States,
and were subject only to the laws passed by Congress. The
Organic Act of 1912 provided for a limited form of territorial
government. The powers granted to the Legislature were
more circumscribed in many particulars than those granted in
general to the territories of the United States. These limita-
tions on the legislative power, as set forth in the Organic
Act, cannot be trespassed upon by the Legislature of the ter-
ritory, and any act in violation of the limitations of the power
would be null and void. On the other hand, the Legislature
was granted power to alter, amend, or modify the laws then in
force in the territory, with certain exceptions.

The only laws in force in Alaska, except the general laws of the United States, were the laws enacted by Congress, specially applicable to Alaska. The secretary of the territory of Alaska was such from the year 1900 by virtue of his appointment as surveyor general of the territory, until that office was abolished in 1925, and thereafter, pursuant to section 1843, R. S. 1878, the present incumbent was appointed as secretary. Sec. 361 of the Compiled Laws of Alaska, authorizing the Secretary of the Interior to prescribe fees for the secretary of the territory, was enacted in 1905, at which time there was no territorial Legislature, and the secretary could only act under laws enacted by Congress and authorized regulations of the Secretary of the Interior, and, as no Legislature of the territory existed at that time, no duties could be imposed on the secretary of the territory by the Legislature. Therefore section 361 of the Compiled Laws could have reference only to the fees due the United States for services performed under the laws of the United States. Consequently I do not consider section 361 of the Compiled Laws pertinent to the issue herein.

The interveners contend that the provisions of the Act of Congress approved August 29, 1914, providing that nothing in the Organic Act shall be so construed to prevent the Legislature passing laws imposing additional duties not inconsistent with the present duties of their respective offices, upon the Governor, marshal, and others, and providing the necessary funds for performing such duties, gives a rule of construction of the provisions of section 11 of the Organic Act, and since it mentions some of the federal officers upon whom additional duties may be imposed by the Legislature, it cannot be construed to prevent the Legislature from imposing similar duties under similar circumstances on all federal officers, for the reason that a rule of construction of a statute is always uniform in its operation and effect; that under this rule the Organic Act must be so construed to mean that the Legislature may impose upon any officer of the United States duties not conflicting with their present duties, and that this includes, not only the officers mentioned in the statute, but also includes the secretary of the territory, whose office is not mentioned in the statute.

Counsel for interveners further urge upon the attention of the court the Act of Congress of June 19, 1878, 20 Stat. 193, providing that for the performance of all official duties imposed by the territorial Legislatures, and not provided for in the Organic Act, the secretaries of the territories respectively shall be allowed such fees as may be fixed by the territorial Legislature. It is urged that this act of Congress was passed some five years subsequent to that of section 1855, R. S., which is to the effect that the secretary and other officers shall not be paid any compensation, other than that paid by the United States, and is a direct authorization for compensation to secretaries of territories for the performance of duties imposed upon them by the Legislature.

It is suggested, on behalf of the plaintiff, that the act cited by the intervener is not applicable to the territory of Alaska, it being a proviso attached to the rider incorporated in the general appropriation bill for the expenses of the Interior Department, and further that the territory of Alaska was not an organized territory at the time of the passage of the act, and that it could not apply to the territories organized thereafter. It is argued on the part of the interveners that section 1843, R. S., would also apply only to the territories then in existence, and that, being the statute under which the present incumbent of the office of secretary of the territory holds his appointment, there would be no authority for his appointment as secretary by the President and he would not be an officer of the United States.

Considering these last contentions of counsel, I am of the opinion that the Act of Congress of June 19, 1878, 20 Stat. 193, providing for the payment of fees to the secretary of the territory for all official duties imposed by the territorial Legislature was a special act of Congress applicable only to the territories of the United States then in existence, and that because the territory of Alaska was not then in existence, and no Legislature was organized in the territory of Alaska, it could not apply to the secretary of the territory of Alaska. I am further of the opinion that section 1843, R. S., is a general statute of the United States, applicable not only to the territories then in existence, but to all future territories that might be organized under the laws of the United States, and I am also of the opinion that section 1855, R. S., as it is incorporat-

ed in the United States Code of 1926, being section 1457 thereof, is a general law of the United States, now in full force and effect, and that, as this section provides that no law of any territorial Legislature shall be made or enforced by which the Governor or secretary of the territory, or the members or officers of any territorial Legislature, shall be paid any compensation other than that provided by the laws of the United States, it forbids the payment of any salary to the secretary of the territory other than that provided by the United States.

On the question whether the secretary of the territory is eligible for appointment to any office under the territorial government, I am of the opinion that he is ineligible, although, ever since the assembling of the territorial Legislature in 1913, duties have been imposed on the secretary of the territory by the Legislature. One of the first acts of the Legislature was to provide for the registration of vital statistics, and the ex officio secretary of the territory was made the registrar of vital statistics, and certain duties were imposed upon him as such registrar, with authority to collect certain fees therefor. There was also imposed upon him the duty of printing and distributing the laws of the territory, the duties relative to domestic corporations. An act regulating banking was enacted, and he was made a member of the banking board, with duties attached. Fees for filing and recording of papers in his office were provided, to be collected by him for services performed, and a certain percentage of such fees were assigned to him as compensation for his services; also in the general appropriation bills of every session from 1913 to and including the present session, moneys were appropriated for clerk hire in carrying out work under territorial laws. At each session his duties were enlarged, and further duties were imposed upon the office, until at the present time much of the various activities of the territory are carried on through his office. During the whole of this period the validity of the acts of the secretary of the territory as registrar of vital statistics, or in relation to corporations, or as a member of the several territorial boards, have never been questioned. He, therefore, by acquiescence, is an officer de facto of the territorial government.

Perhaps the most comprehensive definition of an officer de facto is given by Chief Justice Butler in the case of State v. Carroll, 38 Conn. 449, 9 Am. Rep. 409:

"An officer de facto is one whose acts, though not those of a lawful officer, the law, upon principles of policy and justice, will hold valid, so far as they involve the interests of the public and third persons, where the duties of the office were exercised, first, without a known appointment or election, but under such circumstances of reputation or acquiescence as were calculated to induce people, without inquiry, to submit to or invoke his action, supposing him to be the officer he assumed to be; second, under color of a known and valid appointment or election, but where the officer has failed to conform to some precedent, requirement or condition, as to take an oath, give a bond, or the like; third, under color of a known election or appointment, void, because the officer was not eligible, or because there was a want of power in the electing or appointing body, or by reason of some defect or irregularity in its exercise, such ineligibility, want of power, or defect being unknown to the public; fourth, under color of an election or appointment by or pursuant to a public, unconstitutional law, before the same is adjudged to be such."

The present secretary of the territory, thus being a de facto officer, clothed with certain public duties, was the Legislature authorized to appropriate any money for the performance of those duties or for the maintenance of the means to carry out those duties? While a de facto officer is not entitled to any compensation for services performed as such de facto officer, does it necessarily follow, where an office is created, and specified duties, such as registration and other clerical duties, are prescribed by law to be performed by the public, or for the benefit of the public, at the office so created, that the appropriation for carrying out those duties should fail because the officer is only a de facto officer? I do not think it can be so concluded, but, on the contrary, I am of the opinion that, until the de facto officer is ousted in the manner provided by law, all appropriations for carrying on the duties prescribed by law should be available to such office.

It is a close point, but, in view of the necessities of the case, its importance to the public, and the general rule of construction of statutes that all appropriations for a public purpose should, if possible, be upheld, if within the law, and that no specific restraint on the power of the Legislature to make such appropriation for carrying on the duties prescribed by law is contained in the enabling act or the general laws of the United States applicable to the territory, and for the further reason that for 12 years last past the secretary has been performing the duties imposed by the Legislature, not a part of his duties as a federal officer, that until the year 1925 his office as ex

officio secretary was an adjunct only of the office of surveyor general, that during that period appropriations were regularly made by the Legislature for the rent of the office of the secretary as such and for expenses necessary in carrying out the provisions of the territorial laws in his office, that during that time Congress made no appropriation for any expenses of the office of secretary, and that he received no salary or office expense from the United States, and that since 1925 no appropriation for any of the incidental expenses of the office has been made by the United States and all incidental expenses thereof have been paid by the territory, I am of the opinion that an order restraining the payment of money for clerk hire and incidental expenses of the office of the secretary of the territory should be denied.

From the foregoing I am of the opinion that an injunction pendente lite should issue, restraining the defendant, the territorial treasurer, from paying out any money from the territorial treasury for overtime to the subordinate officers of the Legislature whose compensation was provided for by the United States, and that he should also be enjoined from the payment of any moneys to the secretary of the territory as salary for work carried on under the territorial laws, and that, as to the other items objected to by the plaintiff herein, no injunction pendente lite should issue.

Let an order be entered accordingly.